| | |
|---|---|
| CARGILL, INCORPORATED,<br><br>     Plaintiff,<br><br>v.<br><br>WDS, INC.; JENNIFER MAIER; and<br>BRIAN EWERT,<br><br>     Defendants. | COMPLAINT<br><br>(JURY DEMAND) |

Plaintiff Cargill, Incorporated ("Plaintiff"), for its Complaint against the Defendants

WDS, Inc. ("WDS"); Jennifer Maier ("Maier"); and Brian Ewert ("Ewert") (collectively

"Defendants"), states as follows:

## **THE PARTIES**

1.     Plaintiff is a corporation organized and existing under the laws of the State of

Delaware, with its principal place of business in Wayzata, Minnesota.

2.     WDS is a corporation organized and existing under the laws of the State of North

Carolina, with a principal place of business in Charlotte, North Carolina.

3.     Maier is an owner and the President of WDS.  Maier is a citizen of the State of

South Carolina and resides in Lake Wylie, South Carolina.

4.     Ewert is an owner and is, or was at times relevant to this Complaint, the Vice-

President of WDS.  Ewert is a citizen of the State of North Carolina and resides in Charlotte,

North Carolina.

5.      The Court has subject matter jurisdiction over this case because Plaintiff is completely diverse from each Defendant and the amount in controversy exceeds $75,000, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(a)(1).

6.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2).

**FACTS APPLICABLE TO ALL COUNTS**

7.      Plaintiff provides food, agricultural, financial, and industrial goods and services.

8.      Plaintiff contracted with WDS for warehousing and distribution of certain products, including but not limited to film, wrap, trays, and spices, manufactured or distributed by third-party vendors.

9.      Plaintiff and WDS first formed a contract in 2009, renewing it in 2012 and 2015 (collectively, "the Agreement" or "the Agreements").  The Agreements enumerated both (A) the categories of products supplied by WDS to Plaintiff, and (B) clear pricing rules for what WDS was to charge Plaintiff for the products.

10.     Under these rules, WDS was to charge Plaintiff only (A) the amount WDS itself paid its direct vendors—the direct vendor price, plus (B) a specified percentage of the direct vendor price—the fixed margin.

11.     The integrity of these terms depended on WDS's integrity in communicating the direct vendor price and the resulting representation of the margin as-applied.  Plaintiff relied upon WDS, Maier, and Ewert to correctly report the direct vendor price plus the agreed-upon margin.

12. Specifically, on or about September 1, 2009, Plaintiff and WDS entered into an agreement ("2009 Agreement"). Under the 2009 Agreement, WDS agreed to provide certain distribution services for Plaintiff at a fixed margin of the direct vendor price.

13. On or about February 1, 2012, Plaintiff and WDS renewed the agreement and expanded the scope of the distributed products ("2012 Agreement"). The 2012 Agreement contained four fixed margin categories, by product.

14. On or about October 15, 2015, Plaintiff and WDS again renewed the agreement, expanding the scope of the distributed products ("2015 Agreement"). The 2015 Agreement contained five fixed margin categories, by product.

15. To manage its inventory at various locations in the relevant time period, Plaintiff issued Purchase Order Requests to WDS for the goods governed by the Agreements, on an as-needed basis.

16. In issuing the Purchase Order Requests, Plaintiff used the amount WDS previously charged for the same requested products and then asked WDS to confirm that pricing for the new order.

17. WDS would either confirm or change the pricing on the Purchase Order Request before sending it back to Plaintiff. In cases involving a change by WDS, the transaction would proceed pursuant to the WDS-modified price.

18. Plaintiff issued Purchase Orders for the goods, engaging in the individual transactions with WDS, with the express understanding and reliance that each price charged was calculated in accordance with the then-applicable Agreement and from the actual vendor price.

19. Plaintiff relied upon the representations of WDS, Maier, and Ewert, with respect to the correct application of the margin, as part of continuing to do business with WDS. The

Case 3:16-cv-00848-FDW-DSC    Document 1    Filed 12/16/16    Page 3 of 10

continuation of the business relationship with WDS worked to the direct benefit of Maier and Ewert, owners of WDS.

20. WDS, directed by Maier and Ewert, caused WDS personnel to mark up the WDS pricing beyond the proper fixed margin, knowing that Plaintiff would rely upon the pricing confirmation.

21. WDS, directed by Maier and Ewert, caused WDS personnel to confirm or modify incorrect Purchase Order Request pricing, knowing that Plaintiff would rely upon the confirmation.

22. Based on WDS's representations—including those by Maier and Ewert—that WDS was providing the agreed-upon pricing in its Purchase Order Request confirmations, Plaintiff continued its relationship with WDS.

23. WDS personnel, including Maier and Ewert, periodically met, in person and by phone, with Cargill personnel to discuss the parties' relationship. During these meetings, WDS personnel, including Maier and Ewert, represented that WDS was performing pursuant to the parties' then-existing Agreement.

24. In fact, WDS, Maier, and Ewert made material misrepresentations about the proper pricing to Plaintiff throughout the relevant time period.

25. Maier and Ewert caused WDS to overcharge Plaintiff, in many cases marking up products several times the permitted fixed margin, and did so numerous times over a period of many years.

26. Defendants' conduct in causing WDS to overcharge Plaintiff was the same before and after signing the 2015 Agreement.

- 4 -

27.     Defendants induced Plaintiff to sign the 2015 Agreement, knowing that they had not performed as required by the 2012 Agreement.

28.     Maier and Ewert caused WDS to actively conceal the actual nature of the markups and the excessive nature of the charges.

29.     When Plaintiff began to question the charges, Maier and Ewert took additional steps to conceal the actual nature of the overcharges, including, without limitation, the falsification of vendor invoices.

30.     In February 2016, Ewert admitted that WDS had overcharged Plaintiff on a film product.  At that time, Ewert falsely claimed that any overcharging was limited to this product.

31.     In early 2016, in an effort to further conceal the misrepresentations and false charges, Ewert asked a film vendor's employee to falsify information on the vendor's direct pricing invoices to WDS.  The film vendor's employee refused to falsify the film vendor invoices.

32.     In March 2016, following Plaintiff's repeated demand for actual vendor invoices so that Plaintiff could evaluate against what WDS was charging Plaintiff, Maier sent to Plaintiff approximately 188 purported direct vendor invoices for a six-month period.

33.     The film vendor later confirmed that a sample set of nine of these invoices was not authentic.

34.     Maier later admitted to falsifying the vendor invoices she had provided Plaintiff in March 2016, changing the actual prices stated on the vendor invoices to false prices that would coincide with the prices Plaintiff had paid WDS.

35.     Maier's admitted conduct is the same conduct Ewert had sought to engage in, through his direct request to the vendor.  Specifically, Maier and Ewert sought to further their

prior misrepresentations and inducements to Cargill by creating false transaction records with vendors, false records that would conform to the Agreements and the prices WDS charged Cargill.

36. In July 2016, WDS—through Ewert and others—again admitted it overcharged Plaintiff.

37. Defendants have not repaid Plaintiff the overcharged amounts.

38. Defendants, including Maier and Ewert as owners of WDS, benefitted from the overcharges.

39. Defendants owe Plaintiff over $75,000, exclusive of interest and costs.

## COUNT I – UNFAIR AND DECEPTIVE TRADE PRACTICES ACT VIOLATIONS
### (Against WDS, Maier, and Ewert)

40. Plaintiff incorporates Paragraphs 1 through 39 above as though set forth fully herein.

41. Defendants committed unlawful acts in violation of N.C. Gen. Stat. § 75-1.1 that were unfair and deceptive. They did so by engaging in a pattern of egregiously and willfully misrepresenting to Plaintiff the sums owed, and misleading Plaintiff as to the margins charged, on the products WDS supplied to Plaintiff.

42. Defendants' actions were immoral, unethical, and unscrupulous. Defendants' willful and knowing actions had the capacity and tendency to deceive and mislead, created the likelihood of deception, and did in fact deceive Plaintiff.

43. Defendants' unfair and deceptive actions were in and affecting commerce.

44. Defendants' actions proximately caused Plaintiff damages exceeding $75,000, exclusive of interest and costs.

- 6 -

**COUNT II – CONVERSION**
**(Against WDS, Maier, and Ewert)**

45. Plaintiff incorporates Paragraphs 1 through 44 above as though set forth fully herein.

46. Through misrepresentations, WDS overcharged Plaintiff by specific and identifiable sums that were in excess of proper product margins.

47. Until the time Defendants wrongfully came into possession of said sums of money, Plaintiff was their lawful owner and was entitled to their immediate possession.

48. Plaintiff sent WDS said sums on the overcharges by wire transfer from Plaintiff's account to WDS's account.

49. Defendants converted said Plaintiff's sums to their own use.

50. Defendants' actions proximately caused Plaintiff damages exceeding $75,000, exclusive of interest and costs.

**COUNT III – FRAUD**
**(Against Maier and Ewert)**

51. Plaintiff incorporates Paragraphs 1 through 50 above as though set forth fully herein.

52. By confirming or changing the pricing on Plaintiff's Purchase Order Requests, Defendants made false representations of, and concealed, past and existing material facts, including the amounts of the fixed margins and the direct prices of the vendors.

53. Defendants' misrepresentations were reasonably calculated to deceive Plaintiff.

54. Defendants' misrepresentations were made with the intent to deceive Plaintiff and with the intent that Plaintiff act upon them and overpay WDS.

55. Defendants' misrepresentations did in fact deceive Plaintiff.

56. Plaintiff's reliance on the representation was reasonable.

57. Defendants' actions proximately caused Plaintiff damages exceeding $75,000, exclusive of interest and costs.

## COUNT IV – CONSPIRACY
### (Against WDS, Maier, and Ewert)

58. Plaintiff incorporates Paragraphs 1 through 57 above as though set forth fully herein.

59. Defendants conspired and entered into agreement with each other, and others known and unknown, to commit unfair and deceptive acts, to convert Plaintiff's moneys, to defraud Plaintiff, to breach WDS's contract with Plaintiff, and to otherwise make misrepresentations to Plaintiff so as to induce it to overpay WDS.

60. Defendants took overt actions in furtherance of the conspiracy, including by setting up the fraudulent overcharges, by renewing Agreements they knew WDS would continue to breach, by asking a vendor to falsify invoices, by submitting to Plaintiff falsified invoices, and by taking steps to hide the fraudulent overcharges after Plaintiff's inquiry.

61. Defendants' actions proximately caused Plaintiff damages exceeding $75,000, exclusive of interest and costs.

## COUNT V – BREACH OF CONTRACT
### (Against WDS)

62. Plaintiff incorporates Paragraphs 1 through 61 above as though set forth fully herein.

63. Plaintiff and WDS formed a contract in 2009 and renewed it in 2012 and 2015.

64. Plaintiff performed its obligations under the contracts.

65. WDS breached the parties' contracts by charging for goods it supplied to Plaintiff more than the fixed margins prescribed by the parties' contracts.

66. WDS further breached the parties' contracts by failing or refusing to make payment to Plaintiff for the overcharges Plaintiff incurred.

67. Defendants' actions proximately caused Plaintiff damages exceeding $75,000, exclusive of interest and costs.

68. All conditions precedent to this claim have been performed, have occurred, or have been excused.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Cargill, Incorporated, respectfully requests that the Court enter judgment in its favor and against Defendants WDS, Inc., Jennifer Maier, and Brian Ewert, and award the following relief:

(a)    Compensatory damages in the amount of no less than $75,000;

(b)    Treble damages;

(c)    Punitive damages;

(d)    Interest at the contract rate until the date of judgment and, thereafter, at the highest legal rate until paid;

(e)    Plaintiff's costs and fees incurred in bringing this action; and

(f)    Other such relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable. Fed. R. Civ. P. 38.

Dated:  December 16, 2016.

/s/Edward F. Hennessey, IV
Edward F. Hennessey IV
N.C. Bar No. 15899
thennessey@robinsonbradshaw.com

Fitz E. Barringer
N.C. Bar No. 42679
fbarringer@robinsonbradshaw.com

**Robinson, Bradshaw & Hinson, P.A.**
101 North Tryon Street, Suite 1900
Charlotte, NC 28246
Telephone: 704-377-2536
Facsimile: 704-378-4000

and

**FAEGRE BAKER DANIELS LLP**

Jacob D. Bylund*
Jacob.Bylund@FaegreBD.com
Dasha Ternavska*
Dasha.Ternavska@FaegreBD.com
801 Grand Avenue, 33rd Floor
Des Moines, IA, 50309-8011
Telephone: 515-248-9000
Facsimile: 515-248-9010

Christine Kain*
Christine.Kain@FaegreBD.com
2200 Wells Fargo Center, 90 S. Seventh Street
Minneapolis, MN, 55402
Telephone: 612 -766-8743
Facsimile: 612-766-1600

*pro hac vice forthcoming

*Attorneys for Plaintiff Cargill, Incorporated*

- 10 -