UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:16-cv-00848-FDW-DSC

CARGILL, INC., and CARGILL MEAT          )
SOLUTIONS, CORP.,                        )
                                         )
        Plaintiffs,                      )
                                         )
vs.                                      )                    ORDER
                                         )
WDS, INC., JENNIFER MAIER, and           )
BRIAN EWERT,                             )
                                         )
        Defendants.                      )
                                         )
_____  )

THIS MATTER is before the Court on Jonathan D. Feit of James, McElroy & Diehl, P.A.'s

Motion to Withdraw or Dismiss this Court's Order to Show Cause (the "Motion"). (Doc. No.

445). This Court issued an Order to Show Cause on June 22, 2018, ordering Mr. Feit to show

cause and appear before the Court on July 9, 2018. (Doc. No. 432). Mr. Feit appeared at the July

9, 2018 show cause hearing as ordered by the Court. Following this hearing, where Mr. Feit had

a full opportunity to respond and be heard, Mr. Feit filed this Motion on July 13, 2018. (Doc. No.

445). In the exercise of its discretion, the Court considers Mr. Feit's Motion despite its filing after

the show cause hearing.

I. BACKGROUND[1]

On January 22, 2018, after a seven day trial, the jury found Defendants WDS, Inc., Jennifer

Maier, and Brian Ewert liable to Plaintiffs Cargill, Inc. and Cargill Meat Solutions, Corp.

("Cargill") for several claims and found for each of the claims that Cargill was entitled to recover

---

[1] The Court summarizes the procedural background and relevant record in chronological order without regard to
timeliness. The Court's summary is only provided to summarize the current record and does not constitute findings
of fact.

$35,177,269. (Doc. No. 314). In its Order addressing Defendants' post-trial motions under Federal Rules of Civil Procedure 50(b) and 59(a), the Court allowed judgment on the verdict on all claims. (Doc. No. 366). Claims against Brian Ewert included conversion, fraud, conspiracy to defraud Cargill or engage in commercial bribery that damaged Cargill, violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") § 1962(a), (c), and (d), and violation of the Unfair and Deceptive Trade Practices Act. (Doc. No. 366). The resulting amended judgment against all Defendants, reflecting trebled/threefold damages, pre-judgment interest, attorneys' fees, and taxable costs, totals $111,173,491.51. (Doc. No. 366). Eventually, a writ of execution against Brian Ewert was entered on April 12, 2018. (Doc. No. 373). Cargill filed a Motion to Charge Interests of Judgment Debtor Brian Ewert on April 13, 2018. (Doc. No. 375).

In addition to prior correspondences with subject lines referencing "Ewert" and "Cargill," on April 28, 2018, C. Richard Rayburn, Jr. of Rayburn Cooper & Durham, P.A., emailed Ed Hinson of James, McElroy & Diehl, P.A. (Doc. No. 443-2). Rayburn Cooper and Durham P.A., as clarified in later emails to counsel for Cargill, represents entities owned by Brian Ewert, including DLP, RFS, RTL, and DLP Holdings. (Doc. No. 443-4). Mr. Hinson and Mr. Feit, the subject of this Court's Show Cause Order, work for the same firm, James, McElroy & Diehl, P.A. The April 28, 2018 email had the subject "Tracy Ewert." (Doc. No. 443-2 at 4). Tracy Ewert is Brian Ewert's wife. The April 28, 2018 email stated:

> Ed:
> I have heard from my client that everyone is scrambling to come up with the retainer and have you in for Tracey ASAP.
> Rick

(Doc. No. 443-2 at 4).

On April 30, 2018, the Court granted in part and denied in part the Motion to Charge Interests of Judgment Debtor Brian Ewert. (Doc. No. 395). The Court's April 30, 2018 Order addressed Plaintiffs' application for an order charging the limited liability company and partnership interests held by Judgment Debtor Brian Ewert with payment of the judgment and post-judgment interest (the "Charging Order"). This Court held:

> Ewert's ownership interests in the NC Entities are subject to the entry of a charging order under N.C. Gen. Stat. §§ 57D-5-03 and 59-703. Plaintiffs shall have the rights of an assignee of such interests, namely, the right to receive the distributions and allocations or any other payment obligation to Ewert to which Ewert becomes entitled based on his ownership interest in a NC entity.

(Doc. No. 395 at 2). The Court then ordered, adjudged, and decreed:

> 2. Ewert's ownership interests in ODDS, LLC; DLP, LLC (or any iteration of DLP, including, without limitation, "Diverse Label Printing" and "DLP Distributions"); DLP Holdings, LLC; Jet Me Around, LLC (or any iteration of the same, including, without limitation, "JMA, LLC"); B-Pak Manufacturing Solutions, LLC; Refrigerated Trucking & Logistics, LLC; WDS Canada, LLC; WDS Laundry Services, LLC; or TBE, LLC are charged with payment of the Judgment, including post-judgment interest.
> …
> 4. Each NC Entity shall pay directly to Plaintiffs all distributions, allocations, dividends, or payments owing to Ewert by such NC Entity in satisfaction of the Judgment until the Judgment is satisfied or further Order of the Court.
> …
> 6. Ewert is enjoined and prohibited from circumventing the terms or purposes of this Order.

(Doc. No. 395 at 2- 3).

In an email dated April 30, 2018, Mr. Rayburn forwarded to Mr. Hinson an email from counsel for Cargill. The forwarded email had an attachment entitled "Charging Order.pdf." The body of the forwarded email stated:

> Rick,
> Attached is an order Judge Whitney entered today directing various entities owned in part or in whole by Brian Ewert, including DLP, to make all distributions

allocations, dividends and payments owing to Ewert to Cargill, Inc. and Cargill Meat Solutions, Corp.

Can you let us know which of these entities you represent?

Thank you,
Jane Maschka

(Doc. No. 443-2 at 7).

On May 7, 2018, a Salary Advance Promissory Note in the amount of $20,000 was signed by Tracy Ewert. (Doc. No. 448-3 at 2). The Note states "the undersigned promises to pay DIVERSE LABEL PRINTING, LLC or order, the principal sum of TWENTY THOUSAND AND NO/100 DOLLARS ($20,000.00), with interest at the rate of two and eighteen hundredths per cent (2.18%) per annum, accrued annually[.]" (Doc. No. 448-3 at 2). The Note indicates payments "shall be withheld from the maker's salary paycheck for a total of seventy-nine bi-weekly pay periods[.]" (Doc. No. 448-3 at 2). DLP's bank statement reflects, a wire out of $20,000.000 with the description of "BNF JAMES MCELROY AND DIEHL;REF TRACY EWERT" on May 8, 2018. (Doc. No. 448-4 at 5).

In an email dated May 8, 2018, Mr. Feit of James, McElroy & Diehl, P.A. emailed Mr. Rayburn stating:

Rick,

I hope you are well. I was hoping you would have some time to have a chat about the Ewert matter(s). Thanks.

Jonathan

(Doc. No. 443-2 at 11). The $20,000 Note was marked as satisfied May 9, 2018. (Doc. No. 448-3 at 2).

In May 2018, Tracy Ewert retained Mr. Feit to represent her in a domestic case against her husband, Brian Ewert. (Doc. No. 445-7 at 1). On May 9, 2018, Raboteau T. Wilder, Jr. of Terpening Wilder Law appeared on behalf of Brian Ewert in this proceeding (Doc. No. 406) and filed a response to Cargill's Motion for Issuance of An Arrest Warrant and Injunctive Relief Against Defendant Brian Ewert, Diverse Label Printing, LLC, ODDS, LLC, Resnex Mfg., Inc., DLP Holdings, LLC, Refrigerated Trucking & Logistics, LLC, Jet Me Around LLC, B-Pak Manufacturing Solutions, LLC, RFS, Inc., H. Vaughn Ramsey, as Trustee of the Brian C. Ewert Irrevocable Trust, and Brian Ewert, as Trustee of the Brian C. Ewert Revocable Trust (Doc. No. 407).

On May 16, 2018, but effective May 1, 2018, Diverse Label Printing, LLC ("DLP") and Brian Ewert executed an employment agreement. (Doc. No. 443-3 at 1). The employment agreement states:

> During the Employment Period, as compensation for the services rendered by Employee to Company, Company will pay to Employee compensation of $50,000.00/month less federal and state income tax withholding and other customary employee deductions as required by law, payable in accordance with Company's customary payroll practices.

(Doc. No. 443-3 at 1).

Also, on May 16, 2018, Mr. Feit on behalf of Tracy Ewert filed a Verified Complaint in Mecklenburg County against Brian Ewert, ODDS, LLC, DLP Holdings, LLC, RFS, Inc., Refrigerated Trucking and Logistics, LLC, Jet Me Around, LLC, Diverse Label Printing, LLC, WDS, Inc., B-Pak Manufacturing Solutions, LLC, WDS Canada, LLC, WDS Laundry Services LLC, and TBE LLC (the "Complaint"). (Doc. Nos. 442-1, 445-2, 445-8). This state court case was assigned docket number 18-CVD-9391. (Doc. Nos. 442-1, 445-2). Tracy Ewert, alleging a

separation date of April 17, 2018, sought postseparation support, alimony, child support, child custody, equitable distribution, and injunctive relief in the Complaint. (Doc. Nos. 442-1, 445-2, 445-7). The Complaint had three exhibits: the jury's verdict in this case, the initial amended judgment from this case, and Tracy and Brian Ewert's premarital agreement. (Doc. No. 442-1, 445-2).

Relying on Chapter 7A's delegation of authority to district courts on domestic claims, Mr. Feit sought injunctive relief for his client under N.C. Gen. Stat. 50-20(i) and N.C. Gen. Stat. 1A-1, Rule 65 in the district court division of North Carolina's General Court of Justice. (Doc. No. 445-7 at 2). Mr. Feit, on behalf of Tracy Ewert, also moved and obtained an ex parte temporary restraining order before the Honorable Christy T. Mann. (Doc. No. 445-7 at 2; Doc. No. 445-8 at 2). The May 16, 2018 Temporary Restraining Order ("TRO") entered by Judge Mann ("TRO") held:

> Pending further Order of this Court, Defendant ODDS, LLC; DLP Holdings, LLC; RFS, Inc.; Refrigerated Trucking and Logistics, LLC; Jet Me Around, LLC; Diverse Label Printing, LLC; WDS, Inc.; B-Pak Manufacturing Solutions, LLC; WDS Canada, LLC; WDS Laundry Services LLC; and TBE LLC shall not make any distributions to Defendant/Father; Cargill, Inc. and/or Cargill Meat Solutions, Corp.; or any other creditor.

(Doc. Nos. 429-1, 445-4).

Benjamin E. Shook of Rayburn Cooper & Durham, P.A. sent a letter to Mr. Feit on May 25, 2018. He stated in the letter:

> As you are aware, my firm represents Diverse Label Printing, LLC, DLP Holdings, LLC, Refrigerated Trucking & Logistics, LLC, and RFS, Inc. with respect to certain business matters. I have reviewed the Ex Parte Temporary Restraining Order as it relates to my clients. As we discussed, we interpret and understand paragraph 2 of the decretal portion on page 3 of the Order to mean that the referenced entities, including my clients, are enjoined from making any distributions to Mr. Ewert on account of his ownership in such entity. In addition, we interpret the Order to

prohibit any distribution or other payment or transfer of assets (on account of a charging order or otherwise) to Cargill, Inc. and/or Cargill Meat Solutions, Corp. or any other creditor where such distributions payments, or transfers would be outside the ordinary course of business.

Based on the above interpretation, we do not believe the regular salary payments to Mr. Ewert and regular payments to creditors and others made in the ordinary course of business are prohibited or enjoined by this Order. Please confirm that this is your understanding as well.

(Doc. No. 443-2 at 14).

Mr. Feit responded:

Dear Ben,

I have your letter of May 25 and I agree with your interpretation of the Ex Parte Temporary Restraining Order.

(Doc. No. 443-2 at 13).

Counsel for Cargill, Jane E. Maschka, left a voicemail with Mr. Feit about the TRO on June 13, 2018. (Doc. No. 445-7 at 2). Mr. Feit's assistant attempted to schedule a telephone call or have counsel for Cargill email Mr. Feit. (Doc. No. 445-7 at 2). Five days later, Cargill filed a Motion to Set Aside Ex Parte Temporary Restraining Order in state court. (Doc. No. 445-7 at 2; Doc. No. 429-2).

On June 20, 2018, Cargill, through a filing on this Court's docket, informed the Court of the state court TRO. (Doc. No. 429). This Court then issued a show cause order, ordering Mr. Feit to appear and show cause why his failure to disclose the Charging Order is not subject to sanctions on July 9, 2018. (Doc. No. 432).

On June 21, 2018, Judge Cayer held an evidentiary hearing in response to Cargill's request for the issuance of an arrest warrant for Brian Ewert. (Doc. No. 435). Counsel from Rayburn

Cooper & Durham, P.A. was present at the defense counsel table with Brian Ewert's counsel of record but did not enter an appearance in this matter. (Doc. No. 435).

In state court, Judge Mann presided over a preliminary injunction hearing on June 25, 2018. (Doc. Nos. 442-2; 445-6). Mr. Feit, on behalf of Tracy Ewert; Mr. J. Huntington Wofford of Wofford Law, PLLC on behalf of Brian Ewert; and Ms. Allison L. Vaughn of Terpening Wilder Law on behalf of the Business Defendants appeared at the preliminary injunction hearing. (Doc. Nos. 442-2; 445-6). As reflected in the transcript and preliminary injunction order, Martin L. Brackett, Jr., of Robinson, Brandshaw & Hinson, P.A., attempted to appear on behalf of Cargill at the preliminary injunction hearing. (Doc. Nos. 442-2; 445-6). The certified transcript for the preliminary injunction hearing states:

> JUDGE MANN: Have y'all filed a motion to intervene?
> MR. BRACKETT: We did not file a motion to intervene. We did file a motion with the Court to bring certain information to the Court's attention.
> MR. FEIT: And, Your Honor, --
> JUDGE MANN: Well, I'm not sure you can do that unless you're a party to the case. Is there some case law that says you can do that if you're not a party to the lawsuit?
> MR. BRACKETT: Your Honor, I have not researched that point. We are affected by the order that was entered ex parte, without any notice to us. And what we filed with the Court brings to this Court's attention the conflict between that temporary restraining order and an earlier order that had been entered by Federal Court here in Charlotte. And those two orders are in direct conflict with each other.

MR. FEIT: Your Honor, I'm not aware of any authority that would allow Mr. Brackett, on behalf of Cargill, to have an opportunity to be heard about anything related to this case, considering they are not parties to the case. They have yet to file a motion to intervene, if that's what their intention is.

To the extent Mr. Bracket, on behalf of Cargill, filed a non-party motion to dissolve a TRO, I don't know why Cargill thinks that is something that's appropriate to do. Nor would it be appropriate for the Court to consider. This is an action between Tracy Ewert and Brian Ewert and various companies. Cargill is not named anywhere. They are not mentioned in the TRO. They are not restrained from doing anything. Nor are we asking the Court in the preliminary injunction to restrain Cargill. Because Cargill is not a party, we couldn't ask the Court to do anything related to that.

So I would object, rather vociferously, to Mr. Brackett, on behalf of Cargill, speaking at all with all due respect to Mr. Brackett -- speaking at all at this hearing.

MR. BRACKETT: Your Honor, in your temporary restraining order, Cargill, Inc., Cargill Meat Solutions Corp., are both specifically named in paragraph 2 of your order, though they were not named parties. And what we filed was a motion to set aside the ex parte temporary restraining order. And we've set out the reasons for that in that motion. And the reason (inaudible) conflict between the order that was presented to you and entered

ex parte versus an order that at the time that TRO was entered was already in place and had already been issued by the Federal Court here in Charlotte.

MR. FEIT: And, Your Honor, I think I misspoke. While Cargill is mentioned, they are not restrained. They are not restrained from doing anything.

JUDGE MANN: Well, it's a lot more simple to me that in family court matters, many times we issue TROs, for instance, saying a bank, you know, not to transfer money or release money to someone, or law firm at a closing not to release the money. But they don't have standing to argue in front of me unless they move to intervene. So that's -- I just don't think you have jurisdiction to argue whatever it is you want to argue because you're, again, not a party to this action.

And while I certainly respect what they're doing up the street at the Federal courthouse, I have jurisdiction over these parties and this action pursuant to -- you know, family court matters are decided here in this District Court. They handle whatever they handle up there. I'm not going to interfere with them and they can't interfere with me.

So unless and until y'all file a motion to intervene and that is granted, I just don't -- I feel like I don't have jurisdiction to -- or y'all don't have standing to interfere in what's going on between these two parties.

MR. BRACKETT: Your Honor, as an officer of the Court we came to this Court first because of a conflict between the order you entered and an order

that had already been entered, because the parties you have restrained from distributing any funds to our client had, before the entry of your TRO, been ordered to distribute those same funds to our client by the Federal Court order.

JUDGE MANN: I understand. I read everything that you sent, that you filed. I've read everything. Done a little bit of research on this. And I'm pretty comfortable with my decision. And maybe Judge Whitney can straighten me out or whatever, but anyway. All right. So what's next?

MR. FEIT: Your Honor, I'm going to hand up -- if I may approach -- a copy of the charging order.

JUDGE MANN: Uh-huh. Okay.

MR. FEIT: So that there could be no question that the Court has that in front of it when making a determination with respect to the preliminary injunction. I'm also going to hand up, out of an abundance of caution, -- may I approach?

JUDGE MANN: Uh-huh.

MR. FEIT: -- the civil docket that contains everything that's been filed in the Federal case so that the Court can either log on and use its ID to look at any pleading or, if the Court is interested in any particular document on here, my office is happy to log on and print it so that Your Honor has it at her disposal. Because the last thing that I want the Court to do is make a decision that, I guess, is somehow - - well, let's just say, I don't want – I don't want personally to be accused, as I've already been accused, of misleading this Court into doing anything. So we're clear, the Court

has all of the documents, or all of
the documents are available that are
part of the Federal case, along with a
copy of the charging order.

The Court might recall that
we were here previously seeking a TRO
in which I handed up a copy of a
complaint that sought, among other
things, a TRO. And attached to that
complaint was both the judgment
against Mr. Ewert and the jury form
that made it abundantly clear that
there was a very large judgment that
was owed by Mr. Ewert and others to
Cargill, Inc., and Cargill Meat
Solutions Corp. And that the very
reason we were there seeking the TRO
was because we had a Federal judgment
or a judgment from a Federal court and
a jury that was potentially going to
compromise my client's rights to
various marital assets.

I can put my client on the
stand if the Court thinks that's
necessary. The alternative is, with
Mr. Wofford's agreement, I can just
hand up the premarital agreement that
exists.

JUDGE MANN: It was attached to your -

MR. FEIT: It was attached to -- all
right. So you already have a copy of
the premarital agreement that
identifies certain rights that
Ms. Ewert has with respect to marital
property, with respect to alimony.
And what we're asking the Court to do
is enter a preliminary injunction
that -- Mr. Brackett is actually not
correct. Because there's nothing in
conflict that the Court did with Judge
Whitney's order.

In fact, Judge Whitney's
order, as I understand it, says that
to the extent there are any

distributions -- and I don't want to mischaracterize it, so I'm going to read it. Part of the order says: The Plaintiff shall have the rights of an assignee of such interest, namely the right to receive the distributions and allocations or any other payment obligation to Ewert to which Ewert becomes entitled based on his ownership interest in a North Carolina entity.

And then the decree of the charging order says: A North Carolina entity shall make no distributions, allocations, dividends or any payment whatsoever to Ewert on account of his ownership interest in such North Carolina entity until further order of the Court. Each North Carolina entity shall pay directly to plaintiffs all distributions, allocations, dividends or payments owing to Ewert by such North Carolina entity in satisfaction of the judgment until the judgment is satisfied or further order of the Court.

The TRO that we sought and that the Court entered simply restrains these entities from making distributions at all until the Court can make a determination about what Ms. Ewert's marital interest in these various entities are. Because under the charging order, Cargill is only entitled to receive distributions that belong to Mr. Ewert. And we don't know what distributions belong to Mr. Ewert until the Court has determined equitable distribution. And the Court obviously has not done that yet. We are at the infant stages of this litigation. And that's something that through discovery and other things we're going to have to

determine.

And what we're simply asking the Court to do is to maintain the status quo. Because, frankly, as everyone knows, once the money is distributed, it's gone. Once Cargill gets their hands on the money, Ms. Ewert is never going to have the opportunity to get it back. So unless this Court restrains these various entities that are named from making distributions until there is a determination about what Ms. Ewert's interest is, Ms. Ewert is going to be deprived of her right to various pieces of property, to interest in property, to distributions from pieces of property that she would otherwise be entitled to.

And I would remind the Court that there is a premarital agreement that doesn't seem to be contemplated by Cargill or Mr. Brackett, that very specifically defines what the rights of Ms. Ewert are. And that's going to take some fleshing out and some figuring out with respect to what these assets are worth, what kind of distributions can be made, what percentage interest Ms. Ewert has in them. And then ultimately, what the Court is going to do in terms of our ask for unequal distribution. And until those things are done, we think a preliminary injunction is necessary. I'm happy to answer any questions the Court might have.

JUDGE MANN: Well, from my review of the file, it appears that the parties separated on April 17th, 2018. The charging order wasn't entered until April 30th, 2018. So as far as I'm concerned, Ms. Ewert, whatever she's entitled to, if anything, whatever

she's entitled to, sort of throws on April the 17th, 2018, prior to the entry of this charging order. And so it's my job to identify, preserve and protect whatever assets and liabilities were owned or owed by the marital unit, and both parties individually, as of April 17th, 2018, which predates this charging order. So I'm comfortable with that.

MR. FEIT: Yes, ma'am. And I appreciate that. And we'll draft the preliminary injunction. But to the extent that the Court feels that in any way it was duped by me and our presentation of the complaint, along with the judgment and the jury form --

JUDGE MANN: I was aware of all of that. This was my -- the TRO was my order. And, again, I think I said in front of Mr. Brackett -- he's now left -- that I enter these types of orders all the time to preserve whatever marital estate there is as of the date of separation. And the closer you can do that to the date of separation, usually the better. And so you've made -- I was aware of all of that.

MR. FEIT: Your Honor, I'd ask -- the only other thing is that I'd ask that Your Honor not require a bond to be posted with respect to any kind of preliminary injunction.

JUDGE MANN: Okay.

MR. FEIT: Given the fact that everything has pretty much been seized from Ms. Ewert, including joint bank account, a car titled in -- at least jointly, in Ms. Ewert's name, et cetera. There really isn't anything to allow for that posting.

(Doc. Nos. 442-2; 445-6; <u>see</u> <u>also</u> Doc. No. 445-8).

The subsequent order entered by Judge Mann found among other things:

> 17. In entering the May 16, 2018 *Ex Parte* Temporary Restraining Order, the Court was not in any way misled by either Plaintiff /Mother or her counsel. The Court was aware of the federal action, the debt to Cargill, and Cargill's continued collection efforts at the time of the entry of the May 16, 2018 *Ex Parte* Temporary Restraining Order. The Court was further aware of the parties involved in the federal litigation, having seen the caption of the federal case. The Court knew that the Plaintiffs named in the federal litigation were not parties to the state court case, and there was no failure to disclose any material information on the part of either Plaintiff/Mother or her counsel.

(Doc. Nos. 442-3, 445-5).  Judge Mann then ordered, adjudged, and decreed:

> 1. Plaintiff/Mother's request for a Preliminary Injunction is granted.
> 2. Defendant/Father and the Business Defendants shall be restrained, pending further Orders of this Court, from making any distributions to Defendant/Father; Cargill, Inc. and/or Cargill Meat Solutions, Corp; or any other creditor.
> 3. The marital residence and its contents, transferred to Plaintiff/Mother by order of the *Ex Parte* Temporary Restraining Order, shall remain in Plaintiff/Mother's possession.
> 4. This Preliminary Injunction shall remain in full force and effect pending further orders of this Court.
> 5. Nothing in this Preliminary Injunction shall be deemed as a waiver or bar of Plaintiff's right to pursue additional relief set forth in her May 16, 2018 Complaint.
> 6. No bond need be posted in connection with this Preliminary Injunction.
> 7. This Preliminary Injunction is enforceable by the contempt powers of this Court.

(Doc. Nos. 442-3, 445-5).

After the preliminary injunction hearing, Mr. Feit received a call from Andrew W.J. Tarr of Robinson Bradshaw & Hinson, who is also counsel for Cargill.  (Doc. No. 445-7 at 3).  Mr. Feit represented that "our only intention was to protect Ms. Ewert's interest in her domestic claim against Mr. Ewert" and "expressed to Mr. Tarr that if Cargill or any of its representatives wanted to discuss carving out Ms. Ewert's interests in the Ewerts' estate so that Cargill could collect on the Judgment from property to which Ms. Ewert was not entitled, that I would be happy to have that discussion."  (Doc. No. 445-7 at 3).

On July 3, 2018, Cargill filed a Motion to Hold Brian Ewert, Diverse Label Printing, LLC, and ODDS, LLC in civil content for violations of the April 30, 2018 Charging Order with accompanying exhibits. (Doc. No. 438).

Prior to the hearing to show cause, Cargill and Mr. Feit apprised the Court of developments in the state court through additional filings. Cargill summarized the developments and filed Mr. Feit's affidavit from state court in support of his motion for attorney's fees, which reflects communication with counsel for Ewert and the entities he owns prior to filing Ms. Ewert's Complaint and seeking the TRO. (Docs. No. 439, 439-1). Cargill also notified the Court that Mr. Feit appears to have obtained an award of approximately $20,000 in monthly support. (Doc. No. 439 at 3). Mr. Feit filed with this Court the Complaint and Motion for Injunctive Relief; the June 25, 2018 Preliminary Injunction Hearing Transcript; and the July 6, 2018 Preliminary Injunction Order. (Docs. No. 442, 442-1, 442-2, 442-3).

Mr. Feit appeared at the hearing on the Order to Show Cause on July 9, 2018. In response to the Court's Order to Show Cause, Mr. Feit represented that we did not know of the Charging Order when he filed the Complaint and sought the TRO for Tracy Ewert. He admitted that he did not attach a copy of the Charging Order to the Complaint and request for injunctive relief when seeking the TRO. Cargill also appeared at the show cause hearing.[2] Cargill summarized its concerns with Mr. Feit's conduct, which was not limited to the nondisclosure but also the appearance of material or misleading misrepresentations in the Complaint, including but not limited to Ms. Ewert's occupation, her allowance from her husband, the collection efforts by Cargill, and the date of separation. Mr. Feit maintains that he relied on the representations of his

---

[2] Raboteau T. Wilder, Jr., counsel for Brian Ewert, was present in the courtroom during the hearing. Mr. Wilder did not make a formal appearance, but he did speak on the record.

client when he filed the Complaint verified by his client and sought the relief to protect his client in the appropriate forum. Mr. Feit did not present any additional evidence at the hearing and did not request to testify under oath. At the end of the hearing, the Court deferred ruling on the motion until after July 17, 2018, to give the parties an opportunity to resolve the situation.[3]

On July 12, 2018, Cargill filed additional materials that it found relevant to the July 9, 2018 show cause hearing. (Doc. No. 443). These materials include emails produced by Rayburn Cooper & Durham and the employment agreement produced by DLP, which have been summarized herein. (Doc. Nos. 443-1, 443-2, 443-3). Cargill also filed emails between their counsel and Mr. Shook of Rayburn Cooper & Durham, P.A. from June and July 2018. (Doc. No. 443-4). In emails dated July 12, 2018, Mr. Shook stated, "[f]or the sake of clarity, we do not represent any of these entities in the District Court matter or in any other litigation." (Doc. No. 443-4 at 1). He also stated, "[w]e do not represent Brian Ewert or any other individual. As you know, we represent DLP, RFS, RTL, and DLP Holdings." (Doc. No. 443-4 at 1).

On July 13, 2018, Mr. Feit filed the Motion to Withdraw or Dismiss this Court's Show Cause Order. (Doc. No. 445). Mr. Feit submitted for the Court's consideration the Affidavit of Jonathan D. Feit; the Affidavit of the Honorable Christy T. Mann; the Complaint and Motion for Injunctive Relief; the TRO; the June 25, 2018 Preliminary Injunction Hearing Transcript; the July 6, 2018 Preliminary Injunction Order; and the Premarital Agreement between Brian Ewert and Tracy M. Barnes (now Ewert). (Doc. Nos. 445, 445-2, 445-3, 445-4, 445-6, 445-7, 445-8).

---

[3] At various points in the hearing, the parties either unilaterally or at the Court's questioning addressed matters occurring after the Order to Show Cause. Some of the parties' inquiries verged on soliciting the Court for advice on how to proceed as to their client. In order to avoid any confusion, the Court clarified on the record that the Court has no obligation to advise the parties and reminded the parties of their obligations, including but not limited to their due diligence obligations. The Court further clarifies that nothing stated by this Court at the hearing may be construed as binding on the Court, advice by the Court, or the law on any matter.

On July 17, 2018, Mr. Wilder filed a response to Cargill's Motion to Hold Brian Ewert, Diverse Label Printing, LLC, and ODDS, LLC in civil content for violations of the April 30, 2018 Charging Order. (Doc. No. 446). In addition to responding and objecting to Cargill's characterization and request for an order to show cause, Mr. Wilder stated he "represents Ewert, ODDS, DLP, and other entities, and has done so since being retained." (Doc. No. 446 at 8; <u>see also</u> Doc. No. 446 at 3).

On July 19, 2018, Ms. Maschka, counsel for Cargill, emailed Mr. Shook, copying Mr. Wilder, stating:

> As far as we are aware, neither DLP nor Ewert has produced any document that sets forth any agreement between ODDS/Ewert and DLP regarding the terms of "commission" payments made to ODDs before the recent change to salary. Does any such document exist?

(Doc. No. 448-5 at 2). Mr. Shook, who represents entities owned by Brian Ewert, including DLP, RFS, RTL, and DLP Holdings (Doc. No. 443-4), responded, "No such document or agreement exists." (Doc. No. 448-5 at 2).

On July 23, 2018, DLP sought relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of North Carolina. (Doc. No. 447). On July 24, 2018, Cargill filed a reply in support of their Motion to Hold Brian Ewert, and ODDS, LLC in civil contempt. (Doc. No. 448). The reply clarified that Cargill "does not seek any contempt finding or civil contempt damages against DLP at this time" in light of the DLP's filing of Chapter 11 bankruptcy and the resulting automatic stay, 11 U.S.C. § 362. Cargill also submitted Tracy Ewert's Salary Advance Promissory Note, DLP's May 2018 First National Bank Account Statement, and July 19-20 emails between Ms. Maschka and Mr. Shook, which have been

summarized herein. (Doc. Nos. 448-2, 448-3, 448-4, 448-5). Cargill also submitted June 4-6 emails between Brian Ewert and Stephanie Norris. (Doc. No. 448-6).

The 17th of July has now passed, and the parties have not informed the Court that they resolved this matter.

## II. MOTION TO WITHDRAW OR DISMISS

### A. Misled

Mr. Feit suggests that he did not mislead Judge Mann because he disclosed the existence of this Court's judgment when seeking the TRO, and when Judge Mann received the Show Cause Order, she still granted the preliminary injunction enjoining distributions to Cargill. (Doc. No. 445-1 at 3). Mr. Feit filed an Affidavit from Judge Mann to support his position. Judge Mann states "I do not believe that Mr. Feit has misled or 'duped' me – either intentionally or negligently – in his seeking and obtaining of either the *Ex Parte* Temporary Restraining Order or the Preliminary Injunction." (Doc. No. 445-8 at 3). Although the Court will consider and afford due weight to Judge Mann's belief and the subsequent preliminary injunction order, what Judge Mann believes is not determinative of materiality or Mr. Feit's ethical obligations. Therefore, the Court will not withdraw or dismiss the Show Cause Order on the basis of Judge Mann's affidavit or the Preliminary Injunction Order.

### B. Jurisdiction over Mr. Feit

In the Motion to Withdraw or Dismiss, Mr. Feit for the first time challenges this Court's jurisdiction over him. Mr. Feit explains that he filed a pleading in state court, rendering Federal Rule of Civil Procedure 11 inapplicable. (Doc. No. 445-1 at 3). Mr. Feit also raises that he had not appeared before the Court prior to appearing at the show cause hearing on July 9, 2018. (Doc.

No. 445-1 at 4).  Thus, he contends he could not be held in direct contempt of Court for his actions in obtaining the ex parte TRO.  (Doc. No. 445-1 at 4).  Further, citing Justice Kennedy's dissenting opinion in <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 72 (1991), Mr. Feit argues "the Court has no jurisdiction . . . to hold him in indirect contempt for any allegedly contemptuous behavior committed outside the presence of this Court, such as inside the Mecklenburg County Courthouse" for it "suggest[s] that this Court has jurisdiction to sanction any person at any time for any conduct, including for a lawyer's pursuing his client's rights in state court, which is unsupported by law." (Doc. No. 445-1 at 4) (emphasis omitted).

However, as recognized by the majority opinion in <u>Chambers</u>, this Court does have inherent authority to "sanction[] for abuses of process occurring beyond the courtroom" and "to control admission to its bar and to discipline attorneys who appear before it."  <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 43, 57 (1991) (citations omitted).[4]  By the Court's records, Mr. Feit has been admitted to practice in this Court since September 25, 2001 and remains active.  (<u>See generally</u> Doc. No. 432 (citing LCvR 83.2)).[5]  This Court also has authority in equity to sanction "a party who shows bad faith by delaying or disrupting the litigation or by hampering enforcement

---

[4] "It has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'"  <u>Id.</u> at 43 (alteration in original) (citations omitted).

[5] <u>See</u> also <u>United States v. Shaffer Equip. Co.</u>, 11 F.3d 450, 457-58 (4th Cir. 1993) ("Our adversary system for the resolution of disputes rests on the unshakable foundation that truth is the object of the system's process which is designed for the purpose of dispensing justice. However, because no one has an exclusive insight into truth, the process depends on the adversarial presentation of evidence, precedent and custom, and argument to reasoned conclusions - - all directed with unwavering effort to what, in good faith, is believed to be true on matters material to the disposition. Even the slightest accommodation of deceit or a lack of candor in any material respect quickly erodes the validity of the process. As soon as the process falters in that respect, the people are then justified in abandoning support for the system in favor of one where honesty is preeminent. . . . The system can provide no harbor for clever devices to divert the search, mislead opposing counsel or the court, or cover up that which is necessary for justice in the end. It is without note, therefore, that we recognize that the lawyer's duties to maintain the confidences of a client and advocate vigorously are trumped ultimately by a duty to guard against the corruption that justice will be dispensed on an act of deceit. . . . The general duty of candor and truth thus takes its shape from the larger object of preserving the integrity of the judicial system.").

of a court order." <u>Hutto</u>, 437 U.S. at 689 n. 14 (citations omitted).[6] Mr. Feit did not challenge this Court's authority on these grounds and raised no objection to this Court's jurisdiction upon his appearance at the hearing on July 9, 2018.[7]

C. Jurisdiction over State Law Claims

Mr. Feit also argues that this Court does not have jurisdiction over Tracy Ewert's domestic claims. (Doc. No. 445-1 at 4). For centuries, the Supreme Court has "disclaim[ed] altogether any jurisdiction in the courts of the United States upon the subject of divorce, or for the allowance of alimony, either as an original proceeding in chancery, or as an incident to a divorce *a vinculo*, or to one from bed and board." <u>Barber v. Barber</u>, 62 U.S. 582, 583 (1858). However, this Court has not suggested it has jurisdiction over such proceedings, but rather, has jurisdiction and authority "in proceedings supplementary to and in aid of judgment or execution" in accordance with state law unless a federal statute governs. Fed. R. Civ. P. 69(a)(1). As a result, this Court has entered orders in aid of judgment or execution including the Charging Order.[8] Mr. Feit's attempts to shift

---

[6] Courts have recognized that certain tactics in post-judgment proceedings may be evidence of bad faith or fraud. <u>Cf.</u> <u>Platt-Barber Co. v. Groves</u>, 44 A. 571, 573 (Pa. 1899) ("[S]tay, or unusual delay of the proceedings, allowing the debtor to sell or otherwise to deal with the goods in contravention of the levy, and other acts of similar nature, give rise to a presumption of want of good faith. . . . Such acts, however, are not frauds per se, but only evidence of fraud, which may be rebutted, and, if the creditor's delay is shown to be in good faith and in furtherance of a genuine intention to collect his debt, he will not be postponed." (internal citations omitted)).

[7] This Court also has the "power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . Disobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401(3). Disobedience or resistance to a lawful writ, process, order, rule, decree or command may be in many forms. <u>Cf.</u> <u>McComb v. Jacksonville Paper Co.</u>, 336 U.S. 187, 192 (1949) ("Respondents could have petitioned the District Court for a modification, clarification or construction of the order. <u>See</u> <u>Regal Knitwear Co. v. Labor Board</u>, 324 U.S. 9, 15. But respondents did not take that course either. They undertook to make their own determination of what the decree meant. They knew they acted at their peril. For they were alerted by the decree against any violation of specified provisions of the Act. It does not lie in their mouths to say that they have an immunity from civil contempt because the plan or scheme which they adopted was not specifically enjoined. Such a rule would give tremendous impetus to the program of experimentation with disobedience of the law which we condemned in <u>Maggio v. Zeitz</u>, <u>supra</u>, at 69. The instant case is an excellent illustration of how it could operate to prevent accountability for persistent contumacy.").

[8] Mr. Feit has not argued that this Court has been deprived of jurisdiction on account of the commencement of Tracy Ewert's proceedings in state court. <u>Cf.</u> <u>Chambers</u>, 501 U.S. at 41, 50, 55 (affirming sanctions upon finding by district

the focus to the domestic law claims further ignores that the Order to Show Cause is based on his seeking and obtaining the TRO. Although injunctive relief is permitted under Chapter 50 of the North Carolina General Statutes, the TRO does not resolve any domestic law claims. It is an injunction impairing the property of others pending the determination of Tracy Ewert's interest in the property.

## III. CONCLUSION

For the reasons stated, the Court DENIES Mr. Feit's Motion to Withdraw or Dismiss this Court's Order to Show Cause. (Doc. No. 445). The Court, in the exercise of its discretion and in light of the further development of the record after the July 9, 2018 hearing, including the filing of bankruptcy by DLP, STAYS consideration of this Court's June 22, 2018 Order to Show Cause for ninety (90) days.[9]

IT IS SO ORDERED.

Signed: July 27, 2018

Frank D. Whitney
Chief United States District Judge

---

court that plaintiff "devised 'first, to deprive this Court of jurisdiction and, second, to devise a plan of obstruction, delay, harassment, and expense sufficient to reduce NASCO to a condition of exhausted compliance'").

[9] After the stay is lifted, the Court, if necessary and appropriate, will enter further notice and order a second show cause hearing.